**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| **Stanley Simmons,** | |
| *Plaintiff,* | |
| *vs.* | Civil Action No. _2:19-cv-425-DCN-BM_ |
| **Dorchester County Detention Center; Dorchester County Sheriff L.C. Knight In His Official Capacity; South Carolina Commission on Indigent Defense and Office of Indigent Defense; Summerville Police Department; and, John Does 1-10,** | |
| *Defendant(s).* | |

**COMES NOW**, the Plaintiff Stanley Simmons ("Plaintiff") complaining of Defendants Dorchester County Detention Center ("Defendant DCDC"), Dorchester County Sheriff L.C. Knight in his official capacity ("Defendant Knight"), South Carolina Commission on Indigent Defense and Office on Indigent Defense ("Defendant SCCID"), Summerville Police Department ("Defendant Summerville"), and John Does 1-10 ("Defendant Does") (collectively "Defendants") would respectfully show unto the Court as follows:

## PARTIES, JURISDICTION AND VENUE

1.  The Plaintiff Stanley Simmons was at all times relevant alleged herein a citizen and resident of Charleston County, South Carolina.

2.  Plaintiff currently resides in Sumter County, South Carolina.

3.      Upon information and belief, Defendant DCDC is a governmental entity as defined in the S.C. Tort Claims Act §15-78-10, et seq. and is subject to liability and suit pursuant to the same act.

4.      Defendant DCDC is a part of the Dorchester County Sheriff's Office and is a governmental entity with the meaning of the South Carolina Tort Claims Act.

5.      Upon information and belief, Defendant Knight is an agent for the State of South Carolina as defined in the S.C. Tort Claims Act §15-78-10, et seq. and is subject to liability and suit pursuant to the same act.

6.      Defendant L. C. Knight, in his official capacity as Dorchester County Sheriff, is a governmental entity within the meaning of the South Carolina Tort Claims Act, and is the entity that operates the Dorchester County Detention Center.

7.      Upon information and belief, Defendant SCCID is a political subdivision or agent for the State of South Carolina governmental entity as defined in the S.C. Tort Claims Act §15-78-10, et seq. and is subject to liability and suit pursuant to the same act.

8.      The South Carolina Commission on Indigent Defense and the Office of Indigent Defense were established by Act 164 of 1993, effective July 1, 1993. The Office operates pursuant to §17-3-310, et seq. of the South Carolina Code of Laws, 1976, as amended, and is responsible for establishing and monitoring programs and services for the delivery of legal representation of indigent defendants and also administers funding, and establishes and supervises training programs for the public defenders. The South Carolina Commission on Indigent Defense and the Office of Indigent Defense is the corporate body of the office operating in

Dorchester County called the Dorchester County Public Defender's Office as part of the First Circuit Public Defender.

9.   Upon information and belief, Defendant Summerville is a governmental entity as defined in the S.C. Tort Claims Act §15-78-10, et seq. and is subject to liability and suit pursuant to the same act.

10.  Defendant Summerville Police Department is a governmental entity within the meaning of the South Carolina Tort Claims Act, and is the entity responsible for investigating crimes and arresting and charging suspects with criminal offenses within the city limits of Summerville, South Carolina.

11.  Upon information and belief, Defendant John Does 1-10 is and were at all times relevant citizens and residents of Dorchester County, South Carolina and whose true identities are known to the other Defendants or will be discovered during the pendency of this action.

12.  Upon information and belief, the incidents complained of and facts giving rise to this action occurred in Dorchester County, South Carolina.

13.  Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

14.  Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983 as the facts giving rise to this action deprived Plaintiff of his Constitutional rights as more fully alleged herein.

15.  This Court may properly exercise supplemental jurisdiction over any State law claim(s) as alleged herein pursuant to 28 U.S.C. § 1367.

16.   Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b)(1) and (2) as all Defendants reside in the same state, and the acts and/or omissions complained of transpired almost entirely within Dorchester County, South Carolina.

## FACTUAL ALLEGATIONS

17.   All facts are based upon the information and belief of the Plaintiff at all times relevant.

18.   On February 13, 2017, Mr. Simmons was arrested for one count of Attempted Murder, Possession of a Weapon During Commission of a Violent Crime ("Possession of a Weapon"), Failure to Stop for Blue Lights, and Possession of Cocaine First Offense.

19.   As a result of these charges Mr. Simmons appeared in the Bond Court for Dorchester County on February 16, 2017 and was given a bond in the amount of $25,000.00 for Possession of a Weapon During a Violent Crime, $1,000.00 for Failure to Stop for Blue Light, and no bond was set on the Attempted Murder charge.

20.   Plaintiff did not post bond on the Possession of a Weapon or Failure to Stop for Blue Light because even had he posted those bonds, he would not have been released due to no bond being set for his Attempted Murder charge.

21.   On March 1, 2017 the Attempted Murder and Possession of a Weapon charges were dismissed as *nolle prosequi* by the Dorchester County Solicitor's Office.

22.   Between March 1, 2017 and March 3, 2017, notice of the Attempted Murder and Possession of a Weapon charges was transmitted to Defendant DCDC.

23. Between March 1, 2017 and March 3, 2017, notice was transmitted to Defendant DCDC that the no-bond hold for Attempted Murder was lifted and that the $25,000 bond for the Possession of a Weapon charge was vacated.

24. Mr. Simmons was never notified the Attempted Murder and Possession of a Weapon charges were dismissed, nor was Mr. Simmons informed of the change in his bond and hold status.

25. Mr. Simmons was also not given copies of the paperwork from the Court or Dorchester County Solicitor's Office concerning the dismissal of the Attempted Murder and Possession of a Weapon charges that was transmitted to Defendants DCDC and Indigent Defense.

26. Mr. Simmons had contact with Detention Center staff on numerous occasions and sent multiple messages to the Defendants DCDC, Indigent Defense, and Summerville, which were processed by Defendant DCDC employees or agents, asking about the status of Mr. Simmons' charges, after the Attempted Murder and Possession of a Weapon charges were dismissed.

27. Mr. Simmons also had discussions with Summerville Police detectives John Does 1 and 2 after his Attempted Murder and Possession of a Weapon charges had been dismissed.

28. During these discussions, Mr. Simmons was told that he would not be released until he provided the detectives with information concerning who attempted to murder the victim.

29. At no time during this process did the Summerville Police detectives inform Mr. Simmons the charges were dismissed, despite Mr. Simmons' direct questions about the status of his pending charges.

30. Despite Mr. Simmons' repeated requests for information on his charges and hold status, no employees or agents for Defendants ever notified Mr. Simmons of the status change for his Attempted Murder and Possession of a Weapon charges which had been dismissed.

31. Mr. Simmons was also never informed he was able to post bond on the remaining minor charge.

32. On April 27, 2017, Mr. Simmons learned of the dismissal of the Attempted Murder and Possession of a Deadly Weapon charges and bonds via a family member of the alleged victim.

33. Immediately upon receiving notification of the true status of his charges, Mr. Simmons secured a surety bond on the remaining charges that same day and was ordered released.

34. On April 28, 2017 Mr. Simmons was released from custody into the custody of SCDPPPS, transferred to the Charleston County jail, and released on April 29, 2017.

35. But for the refusal of Defendants staff to deliver the notification from the court, or to alert him at any point during his repeated enquiries about his charges that his no-bond hold had been lifted, Mr. Simmons would have bonded weeks prior to his release.

36. Until April 27, 2017, Mr. Simmons believed based on the totality of all information provided to him he was on a no-bond status and could not bond out of jail for any amount of money.

37.     On April 3, 2017, Mr. Simmons was involved in an incident during which pepper balls were deployed for which he would not have been present had he been notified of the change in his hold status and bond.

## FOR A FIRST CAUSE OF ACTION
**(Negligence; Negligence Per Se; Gross Negligence; Reckless; or Wanton as to all Defendants)**

38.     The foregoing allegations are repeated herein as if fully set forth verbatim.

39.     Defendants owed Plaintiff a duty to not only ensure that the status change of his criminal charges was communicated to him in a timely manner, but to ensure that they communicated accurate and truthful information to the Plaintiff regarding the status of his criminal charges when asked by the Plaintiff.

40.     Defendants owed the Plaintiff a duty to ensure the accuracy and truthfulness of the information was actually provided to the Plaintiff while he was in the custody and control of Defendants SCDC and Knight.

41.     Defendants owed a duty to Plaintiff to ensure all court documents were properly and timely transmitted to Plaintiff while Plaintiff was in the custody and control of Defendants SCDC and Knight.

42.     Defendants were deficient in their duties to:

   a. Institute policies to properly and adequately protect citizen's rights;

   b. Institute policies to properly and adequately ensure citizens or those in their custody were not falsely imprisoned;

   c. Institute policies to ensure citizens were not unlawfully and forcefully detained after dismissal of their criminal charges;

d. Properly train agents and employees to ensure persons in their custody and control were received all legal correspondence relating to their criminal charges or were not unlawfully detained;

e. Institute or adjust their policies and training for agents and employees to ensure such incidents were not repeated;

f. Adequately protect citizens' rights;

g. Ensure citizens were not falsely imprisoned;

h. Ensure citizens would not remain forcefully and unlawfully detained after dismissal of criminal charges;

i. Train employees to take appropriate measures to ensure that citizens in their custody and control would not be unlawfully deprived of notice and correspondence regarding pending or dismissed criminal charges or unnecessary detention;

j. Failing to reprimand, train, or retrain employees after depriving citizens of their rights;

k. Such further acts or omissions which will be revealed during the pendency of this action;

43. As a direct and proximate result of Defendants' acts and omissions, Plaintiff suffered damages including pain and suffering, loss of enjoyment of life, great mental anguish, mental distress, loss of income, loss of earning opportunities, and any other damages which may be shown during the pendency of this action.

## FOR A SECOND CAUSE OF ACTION
### (False Imprisonment as to all Defendants)

44. The foregoing allegations are repeated herein as if fully set forth verbatim.

45. That on March 1, 2017, Plaintiff's charges of Attempted Murder and Possession of a Weapon were dismissed, but Defendants failed to notify Plaintiff that these charges had been dismissed.

46. The Defendants then continuously failed to alert Plaintiff to this fact despite direct inquires by Plaintiff to employees and agents of Defendants as to the status of Plaintiff's charges and/or intentionally misrepresented to Plaintiff the current status of his charges.

47. The Defendants acts and omissions caused Plaintiff's false imprisonment despite Defendants' actual knowledge of the true status of Plaintiff's charges.

48. The Defendants did intend to cause Plaintiff's continued restraint through their failure to provide Plaintiff with truthful and accurate information about the status of his pending charges in an effort to wrest information from Plaintiff which Defendants had no proof Plaintiff possessed.

49. The Defendants had no lawful authority to withhold the knowledge of the status change regarding Plaintiff's criminal charges and in fact purposefully intended that Plaintiff remain incarcerated after Defendants had actual knowledge Plaintiff's charges had been dismissed in an effort to extort Plaintiff.

50. As a direct and proximate result of Defendants' acts and omissions, Plaintiff suffered damages including pain and suffering, loss of enjoyment of life, great mental anguish, mental distress, loss of income, loss of earning opportunities, and any other damages which may be shown during the pendency of this action.

## FOR A THIRD CAUSE OF ACTION
### (Violation of South Carolina Constitution Art. 1 § 3 and § 15)

51. The foregoing allegations are repeated herein as if fully set forth verbatim.

52. The Defendants did deprive Plaintiff of his rights guaranteed under the South Carolina Constitution pursuant to Article 1 §3's guarantee of due process and equal protection by deliberately withholding information concerning Mr. Simmons' charge status in an effort to punish Plaintiff.

53. Defendants did deprive Plaintiff of his due process rights by intentionally failing to provide Plaintiff access to information concerning dismissal of Plaintiff's criminal charges thereby requiring Plaintiff to remain incarcerated for more than an additional 50 days.

54. Defendants did deprive Plaintiff of his due process rights by intentionally providing Plaintiff false information concerning the status of his criminal charges in an effort to extort information from Plaintiff.

55. Defendants unlawfully detained Plaintiff in his capacity as a potential witness to a crime by actively providing false information to Plaintiff thereby requiring Plaintiff to remain in custody for more than 50 days.

56. Defendants did intentionally cause Plaintiff to remain incarcerated for more than 50 days as punishment for Plaintiff enforcing his constitutional rights.

57. The Defendants did deprive Plaintiff of his rights guaranteed under the South Carolina Constitution pursuant to Article 1 §15's guarantee of no cruel, corporal, or unusual punishment.

58. As a direct and proximate result of Defendants' acts and omissions, Plaintiff suffered damages including pain and suffering, great mental anguish, mental

distress, loss of enjoyment of life, loss of income, loss of earning opportunities, and any other damages which may be shown during the pendency of this action.

## FOR A FOURTH CAUSE OF ACTION
### (42 U.S.C. § 1983)

59. The foregoing allegations are repeated herein as if fully set forth verbatim.

60. At all relevant times as alleged in the Complaint, the Plaintiff was a citizen of the United States, subject to the jurisdiction thereof, and entitled to all rights, privileges, or immunities secured by the U.S. Constitution.

61. At all relevant times hereto and as alleged more fully herein, the Defendants were acting under the color of all applicable statute(s), ordinance(s), regulation(s), custom(s), or usage(s) of the State of South Carolina in their dealings, communications, acts and/or omissions with respect to the Plaintiff as alleged more fully herein.

62. The Defendants, individually and acting in concert, in their actions and/or omissions as more fully alleged and described above, deliberately deprived Plaintiff of his rights, privileges, or immunities secured by the Constitution and laws of the United States and the State of South Carolina, including by way of example and without limitation:

   a. Plaintiff's Fourth Amendment right to be secure in his person against unreasonable seizures;

   b. Plaintiff's Fifth Amendment right to due process of law;

   c. Plaintiff's Sixth Amendment right to speedy access of the Courts, assistance of Counsel, and to be informed of the nature and cause of the accusations against him;

d. Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment;

e. Plaintiff's Fourteenth Amendment right to due process of law and equal protection of the laws.

63. As a direct and proximate result of Defendants' acts and/or omissions, Plaintiff's Constitutional rights were violated, and he suffered damages including pain and suffering, loss of enjoyment of life, great mental anguish, emotional distress, loss of income, loss of earning opportunities, and any other damages which may be shown during the pendency of this action.

**WHEREFORE**, Plaintiff requests that judgment be entered against Defendants on all causes of action and that Plaintiffs be awarded:

A) Actual damages;

B) Punitive damages that may be properly pled;

C) Any attorney's fees which may be properly pled;

D) Costs and disbursements; and,

E) Such other and further relief as the Court may deem just and proper.

Respectfully submitted this **13th** day of **February**, **2019**.

By: **SLOTCHIVER & SLOTCHIVER, LLP**

*/s/ Andrew J. McCumber, Esq.*
**Andrew J. McCumber, Esq.**
*Fed ID No. 11991*
751 Johnnie Dodds Blvd, Suite 100
Mount Pleasant, South Carolina 29464
Telephone:    (843) 577-6531
Facsimile:     (843) 577-0261
andrew@slotchiverlaw.com

(*signature block continued on the following page*)

**LEEDS AVENUE LAW GROUP, LLC**

*/s/ Christopher W. Burrows, Esq.*
Christopher W. Burrows, Esq.
*Fed. ID No.* 12139
3740 Leeds Ave.
N. Charleston, SC 29405
P – (843) 800-0529
F – (843) 507-8774
chris@leedsave.com

**ATTORNEYS FOR THE PLAINTIFF**

Charleston, South Carolina