**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| **Stanley Simmons,** *Plaintiff,* vs. **Dorchester County Detention Center; Dorchester County Sheriff L.C. Knight In His Official Capacity; South Carolina Commission on Indigent Defense and Office of Indigent Defense; Town of Summerville and, John Does 1-10,** *Defendant(s).* | *Civil Action No. 2:19-CV-425-DCN-BM* |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION**
**TO DEFENDANT TOWN OF SUMMERVILLE'S MOTION TO DISMISS**

### I.    INTRODUCTION

Plaintiff's First Amended Complaint ("Complaint") properly asserts claims for violation of 42 U.S.C. §1983, negligence, False Imprisonment, and violation of South Carolina Constitution Art. 1 §3 and 15, against Defendant Town of Summerville ("Defendant Summerville") for its acts and omissions concerning Plaintiff Stanley Simmons. Defendant Summerville's motion is inappropriate and premature, as Plaintiff has pled facts sufficient to support his causes of action against Defendant Summerville. Plaintiff's First Amended Complaint is premised on the fact that Defendants not only failed to properly provide Plaintiff Simmons notice regarding his criminal charges through their acts and omissions, but Defendants also intentionally violated Plaintiff Simmons' constitutional rights by knowingly and intentionally withholding information, or even making outright misrepresentations,

concerning Plaintiff Simmons' charge status of which Defendant Summerville was aware of at the time.

Plaintiff's Complaint is facially plausible and pleads factual content that allows this Court to draw the reasonable inference Defendant Summerville is liable for the misconduct alleged. Given no discovery has taken place, Defendant Summerville's argument for dismissal is premature and its arguments are more suited to a summary judgment motion once the parties have been allowed to engage in discovery.

Plaintiff requests this Court deny Defendant Summerville's Motion to Dismiss. Alternatively, if this Court grants Defendant Indigent Defense's motion, Plaintiff asks he be allowed to amend his complaint to add additional facts supporting his claims against Defendant Summerville. Finally, as an additional prefatory matter, many of the arguments proffered by Defendant Town of Summerville are virtually identical to arguments proffered by Defendant South Carolina Commission on Indigent Defense in their Motion to Dismiss. Accordingly, Plaintiff would, to the extent permissible, incorporate by reference the authorities and arguments cited therein, in connection with their response to the present motion.

## II.     FACTS

Plaintiff Simmons was arrested on or about February 13, 2017 for Attempted Murder, Possession of a Weapon during a Violent Crime, and Failure to Stop for Blue Lights. (Complaint ¶ 18). Plaintiff Simmons received a bond in the amount of $25,000.00 for the Possession of a Weapon charge and a $1,000.00 bond for the Failure to Stop charge, with no bond being set for the Attempted Murder charge. (Complaint ¶ 19). Plaintiff Simmons did not post either the Possession of a Weapon or Failure to Stop bonds as he had a no bond for his Attempted Murder charge. (Complaint ¶ 20). On March 1, 2017, the Attempted

Murder and Possession of a Weapon charges against Plaintiff Simmons were dismissed as *nolle prosequi* by the Dorchester County Solicitor's Office. (Complaint ¶ 21). Some time between March 1 and March 3, 2017, these charges were dismissed and notice of same was transmitted to Defendant Dorchester County Detention Center (Complaint ¶ 22). Plaintiff Simmons never received any notification concerning the dismissal of these charges from any of the Defendants, including Defendant Summerville. After the dismissal of Plaintiff's charges, agents for Defendant Summerville appeared at the jail to question Plaintiff Simmons regarding the crime he had previously been charged with, and arrested for, by Defendant Summerville. Plaintiff Simmons asked detectives of the Summerville Police Department the status of his case. At this time the detectives informed Plaintiff Simmons he would not be going anywhere until he provided them information concerning an attempted murder case. Defendant Summerville's detectives knew or should have known the current status of the charges against Plaintiff Simmons given they were still actively investigating this open case. Plaintiff Simmons was eventually notified, not by any one of the Defendants, but rather, a relative of the alleged victim that the Attempted Murder and Possession of a Weapon charges had been dropped. Upon learning the same, Plaintiff Simmons immediately posted bond for his remaining charges on April 27, 2017. (Complaint ¶ 33). Plaintiff Simmons would have posted bond and been released prior to April 27, 2017 had Defendant Summerville's detectives notified or otherwise responded to Plaintiff Simmons's request for updates concerning his charges and/or refrained from making material misrepresentations to Plaintiff Simmons regarding the same.

## ARGUMENT AND AUTHORITY

### A. Motion to Dismiss Standard

To survive a Rule 12 (b)(6) motion "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Moreover, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A complaint's factual allegations must generate a liability inference sufficient to move a plaintiff's claims from conceivable to plausible. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009). Satisfaction of this "context specific" test does not require "detailed factual allegations" but merely sufficient to allow a court to infer more than a mere possibility of misconduct based upon the courts "judicial experience and common sense." *Id*. A dismissal for failure to state a claim should only be granted when it appears certain a plaintiff cannot prove any set of facts supporting the claim for relief, after accepting all well-pleaded allegations as true and drawing all reasonable inferences in the plaintiff's favor. *Martin v. Duffy*, 858 F.3d 239, 248 (4th Cir. 2017).

The Supreme Court has explained that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft.* at 678. "When there are well-pleaded

factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Thus, "[i]n ruling on a 12(b)(6) motion, a court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty, Md.,* 684 F.3d 462, 467 (4th Cir. 2012) (internal quotations omitted). Furthermore, "a court may consider documents attached to the complaint or the motion to dismiss so long as they are integral to the complaint and authentic." *Id.* A court may not go beyond any documents attached to a complaint or motion to dismiss on a 12(b)(6) motion as doing so converts the motion into a motion for summary judgment. *Nemours v. Kolon Indus.*, 637 F.3d 435, 448 (4th Cir. 2011). Such a conversion is inappropriate when the parties have not had an opportunity for reasonable discovery. *Id*. See also *Dolgaleva v. Va. Beach City Pub. Sch.*, 364 Fed.Appx. 820, 825 (4th Cir. 2010) (statements of counsel raising new facts constitutes matters beyond the pleadings and therefore may not be considered on a Rule 12(b)(6) motion).

### B. Plaintiff's 42 U.S.C. §1983 claim

Plaintiff Simmons alleges Defendant Summerville deprived him of his constitutional rights by knowingly and intentionally providing false information concerning Plaintiff Simmons' charging status. This false information deprived Plaintiff Simmons of his constitutional rights of due process, right to be informed of the nature of the accusations against him, and to be free from cruel and unusual punishment. These deprivations are the direct cause of Plaintiff Simmons' claims for violations of his constitutional rights.

To pursue a §1983 claim, a plaintiff must allege they were (1) deprived of a right secured by the constitution or laws of the United States and (2) the alleged deprivation

was committed under color of law. *Thomas v. The Salvation Army Southern Territory*, 841 F. 3d 632, 637 (4th Cir. 2016). Municipalities may be liable under §1983 for failure to train its agents or employees. *Canton v. Harris*, 489 U.S. 378, 387 (1989). Failure to train may rise to the level of a constitutional violation if the failure to train can be viewed as a policy itself. *Id.* at 388-90.

      Defendant Summerville's Motion to Dismiss attempts to allude that the Town of Summerville may only be liable in a §1983 action if there is a direct policy, ordinance, regulation, or decision officially adopted and promulgated by the body's offices. However, this ignores the fact that a failure to properly train employees or a deliberate indifference to ensuring proper training can itself be a §1983 violation. It is entirely possible that Defendant Summerville has properly trained its employees concerning the rights of all those accused of crimes by Defendant Summerville. However, this is an argument best for summary judgment after discovery has been conducted, not in a motion to dismiss when the Plaintiff has pled allegations sufficiently in order to support his cause of action. Plaintiff Simmons cannot know the amount of training, if any, was provided to detectives for the Summerville Police Department until such time as the Plaintiff has been able to conduct discovery on this issue.

      Additionally, Defendant Summerville also attempts to distort Plaintiff Simmons' allegations that he was deprived of his right to bail when this is not at all what a plain reading of Plaintiff Simmons's Complaint state. The thrust of Plaintiff Simmons' complaint is instead that his constitutional rights were violated when Defendant Summerville's employees intentionally misled Plaintiff Simmons about the status of his case for the purpose of punishing Plaintiff Simmons for not cooperating. Intentionally misleading a person to believe they were legally unable to leave jail, unless and until they agreed to

cooperate in an investigation, would clearly be a violation of an individual's constitutionally protected freedoms. Plaintiff Simmons has never once claimed that he was deprived of his right to bail in either his Amended Complaint or any other filings. However, Plaintiff Simmons does not at this time know which specific policies or procedures were violated by Defendant Summerville because he has not had an opportunity to conduct discovery.

### C. Failure to state a claim for which relief may be granted

Defendant Summerville claims Plaintiff Simmons fails to state a claim for negligence despite the wealth of facts pled to the contrary. Furthermore, Defendant Summerville claims that because Plaintiff Simmons was served with arrest warrants that somehow that fact alone negates any further acts or omissions by Defendant Summerville or its agents. As Plaintiff Simmons' Amended Complaint notes multiple times, Defendant Summerville and its agents were negligent. This negligence comes in the form of negligence, gross negligence, negligent training, negligent supervision, negligent hiring, and any other forms of negligence which may be discovered during the pendency of this action.

Defendant Summerville also claims that because Plaintiff Simmons failed to secure a bond for one of his charges because he was simultaneously being held on a no bond for other charges, that Defendant Summerville could not be negligent. This despite the Amended Complaint stating that agents for Defendant Summerville intentionally withheld and provided factually incorrect information to Plaintiff Simmons. This alone would support a negligence claim as Plaintiff Simmons has pled a duty, a breach of that duty, and damages suffered. In light of Plaintiff's facially plausible pleadings, which, if taken in a light most favorable to Plaintiff, show a prima facie case of negligence against Defendant Summerville, dismissal would be improper.

### D. False Imprisonment

False Imprisonment is the deprivation of liberty without lawful justification *Law v. South Carolina Dept. of Corrections*, 629 S.E.2d 642, 368 S.C. 424, 440 (2006). A plaintiff must show: (1) the defendant restrained the plaintiff; (2) the restraint was intentional; and (3) the restraint was unlawful. *Id.* at 440-41. Fundamentally, determining the lawfulness of an arrest is whether there was probable cause to make the arrest. *Gist v. Berkeley County Sheriff's Dept.*, 336 S.C. 611, 615, 521 S.E.2d 163, 165 (Ct.App.1999). Probable cause requires a good faith belief that a person is guilty of a crime when this belief rests on such grounds as would induce an ordinarily prudent and cautious man, under the circumstances, to believe likewise. *Jones v. City of Columbia*, 301 S.C. 62, 65, 389 S.E.2d 662, 663 (1990).

Once detectives for Defendant Summerville knew that Plaintiff Simmons no longer had pending charges against him for Attempted Murder, their intentional providing of false information converted Plaintiff Simmons's lawful detention into unlawful detention. While the initial arrest of Plaintiff Simmons appears to have been lawful, the actions of Defendant Summerville's agents after this time is what gave rise to Plaintiff Simmons' claim for false imprisonment. If detectives for Defendant Summerville had actual or even constructive knowledge that the Attempted Murder charges against Plaintiff Simmons were dismissed, then the acts of the detectives could not possibly be seen as ones which an ordinarily prudent individual would believe allowed for Plaintiff Simmons's continued detention. Moreover, their intentional decision to affirmatively act, and to provide false information to Plaintiff Simmons's regarding the status of his charges would give rise to Plaintiff's claims for false imprisonment. At that moment, their detention of Plaintiff became an unlawful venture wherein agents of the state used outright misrepresentations

of fact to detain Plaintiff Simmons for questioning and using their position of authority to reaffirm that Plaintiff could not leave the premises, all while knowing Plaintiff had no obligation to remain. To the extent there were no such actions by Defendant Summerville, Plaintiff's claims may warrant dismissal. However, until such time as the parties have had the opportunity to conduct discovery in this matter, a dismissal would be inappropriate and premature.

### E. South Carolina Constitution Art. 1 §3

Procedural due process concerns government decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment of the United States Constitution. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). The fundamental requirements of due process include notice, opportunity to be heard in a meaningful way, and judicial review. S.C. Const. art. 1, § 22. Due process is flexible and the requirements for such procedural protections vary as the particular situation demands. *S.C. Dept. of Soc. Servs. v. Wilson*, 352 S.C. 445, 452, 574 S.E.2d 730, 733 (2002). Federal rules only require a short and plain statement of facts showing the pleader is entitled to relief and do not allow for dismissal of such claims due to an imperfect statement of the legal theory supporting the asserted claim. *Johnson v. City of Shelby*, 574 U.S. __ (2014).

Defendant Summerville once again pleads facts not in evidence and which are more appropriate for a summary judgment motion rather than a motion to dismiss based on the pleadings. However, this also glosses over the fact that the causal connection is not that Plaintiff Simmons was initially arrested and charged, but rather the acts and omissions of Defendant Summerville and its agents after they knowingly and intentionally

provided incorrect information to Plaintiff Simmons concerning his attempted murder charges. This is the point where Plaintiff Simmons' due process rights were violated.

Defendant Summerville also makes the same assumptions about bail which Defendant South Carolina Indigent Defense did, namely that because Plaintiff Simmons did not secure a bond for his Failure to Stop for Blue Light charge, then that is the end of the inquiry. However, as Plaintiff Simmons noted in response to the arguments proffered in support of this position, Plaintiff Simmons was also under a no bond order for Attempted Murder at the same time. Plaintiff Simmons was indigent according to the standards of South Carolina courts and the South Carolina Commission on Indigent Defense. It is preposterous to presume Plaintiff Simmons would use what scant resources he had available to secure a bond for one charge, but still be held in jail on another charge for which he could not be released. Plaintiff could not be expected to spend money securing a bond that accomplished nothing when he could not even afford defense counsel for himself. To claim otherwise is to be intentionally ignorant of the totality of the circumstances as they existed at the time.

Moreover, this entire line of argument proffered now by two State entities in this matter is nothing short of victim-blaming, in apparent attempt to distract away from their own failures. Defendants ought to consider that the reason Plaintiff filed the subject suit is not due to Plaintiff's arrest for crimes he did not commit—rather, it was the State's complete and total systemic failure to promptly inform (and certainly to refrain from misinforming) a citizen that charges levied against him had been dropped, and that he was free to leave provided that he first post bond. It is patently abhorrent that our State government is coming before this Court to take the position that persons under **their** custodial care, persons over whom **they** have the ability to control access to information

and communication with the outside world, are the ones who are best suited to prevent situations like this from occurring.

A citizen of the United States is constitutionally guaranteed "to be informed of the nature and cause of the accusation[s]" against him. <u>See</u>, AMEND. 6, U.S. CONST. If the nature of accusations against Plaintiff Simmons no longer included charges for Attempted Murder and Possession of a Weapon, Plaintiff was constitutionally entitled to be informed of the same. The situation would be quite different had any Defendant actually cited a single instance where any entity of the State actually informed Plaintiff regarding the dismissal of his charges. Rather, they have opted instead to gloss over their own failures in upholding their constitutional duties, and instead claim that none of this would have been an issue of if this indigent man had just posted bond on charges after his bond hearing.

Plaintiff Simmons posted bail for the Failure to Stop charge immediately after he learned his Attempted Murder charges were dropped, indicating but for Defendant Summerville's acts and omissions, Plaintiff Simmons would have secured his release two months earlier than he did. Furthermore, Defendant Summerville makes a statement that Plaintiff Simmons was not treated any differently than others while in custody, yet there is no evidence presented to support this contention nor has there been any discovery on this matter. It is possible that what Defendant Summerville claims is true, but again, this is an argument for summary judgment after discovery has been conducted and is an inappropriate standard for a motion to dismiss. Without an opportunity to discover if there were similarly situated inmates, the purpose of any motion to dismiss standard would be reduced to that so long as a defendant denies the allegations, the case must be dismissed.

### *F.  South Carolina Constitution Art. 1 §3*

Defendant Summerville makes the same mistake as Defendant South Carolina Indigent Defense when it attempts to argue that Plaintiff Simmons is claiming he was denied a right to bail when in fact Plaintiff Simmons made no claims of the sort. Plaintiff Simmons has and continues to rest his claim under the South Carolina Constitution Art. 1 §3 on the fact of cruel and unusual punishment and unreasonable detainment. Without belaboring the same points as raised above, the issue in this case is that but for the false information intentionally provided to Plaintiff Simmons, he would have been released from incarceration approximately two months earlier. However, when Defendant Summerville's agents knowingly and intentionally provide inaccurate information to an indigent incarcerated individual, this is an unlawful and unconstitutional deprivation of rights. The purpose of these incorrect statements by Defendant Summerville's agents was to improperly coerce a statement or false confession from Plaintiff Simmons. Plaintiff Simmons faced a hardship in securing his bond for Failure to Stop even though his bond for this charge was only $1,000.00. To expect an indigent defendant to post bond when he cannot easily raise even this modest amount and leave it posted for an indefinite time while also having a no bond status for other charges ignores reality. Defendants Summerville's position that if an indigent defendant is intentionally misled regarding the status of their case but must somehow magically divine the true facts while having minimal resources is anathema to long established rights concerning detainment and punishment.

Both of the motions to dismiss filed in this matter have taken the same approach—"this wasn't our fault; and this all could have been avoided by Plaintiff"—both contentions that are obviously disputed by the Plaintiff. However, the undersigned finds it striking that

there remain two simple questions no Defendant has yet to seem interested in addressing:

1. Why did a citizen of this country have to wait, behind bars, nearly sixty days, to find out that the one charge which was preventing him from being able to bond out had been dismissed?

2. Why did a citizen of this country have to be informed about this fact not from (1) his lawyers; (2) not from the officers who arrested and subsequently returned to interrogate him during his detention; and, (3) not from the facility detaining him, but rather from a family member of the person that he allegedly had attempted to murder?

Without the opportunity to engage in meaningful discovery, these questions will remain unanswered, the State will remain unaccountable for their actions, and justice will remain, yet again, unavailable to the Plaintiff.

## **CONCLUSION**

For each of the foregoing reasons as set forth herein, Defendant Summerville's Motion to Dismiss should be denied. Plaintiff Simmons has pled facts, when taken as true and viewed in the light most favorable to him, which are sufficient to raise his claims beyond possible and into probable. All reasonable inferences from Plaintiff Simmons' allegations show there is a plausible claim for relief as to all Defendants, including Defendant Summerville. Finally, if Defendant Summerville's Motion to Dismiss is granted, Plaintiff Simmons request this Court allow him an opportunity to amend his complaint to cure any defects alleged.

(signatures contained on the following page)

Respectfully submitted this **29th** day of **May**, **2019**.

>By:    **SLOTCHIVER & SLOTCHIVER, LLP**
>
>*/s/ Andrew J. McCumber, Esq.*
>**Andrew J. McCumber, Esq.**
>*Fed ID No. 11991*
>751 Johnnie Dodds Blvd, Suite 100
>Mount Pleasant, South Carolina 29464
>Telephone:   (843) 577-6531
>Facsimile:    (843) 577-0261
>andrew@slotchiverlaw.com
>
>**LEEDS AVENUE LAW GROUP, LLC**
>/s/ Christopher W. Burrows, Esq.
>*Fed ID No. 12139*
>3740 Leeds Ave.
>N. Charleston, SC 29405
>P – (843) 800-0529
>F – (843) 507-8774
>chris@leedsave.com
>
>**ATTORNEYS FOR THE PLAINTIFF**

Charleston, South Carolina